**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BoxIt, LLC d/b/a KitNipBox,<br>  7135 Austin St.<br>  Forest Hills, NY 11375<br>  (805) 394-8269<br><br>        Plaintiff,<br><br>    v.<br><br>Francois Deschenes,<br>   375 Water Street<br>   Vancouver BC V6B 5C6,<br><br>Olivia Canlas,<br>   375 Water Street<br>   Vancouver BC V6B 5C6,<br><br>       and<br><br>meowbox, Inc.,<br>   375 Water Street<br>   Vancouver BC V6B 5C6,<br><br>       Defendants. | Case No. |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY DEMAND**

BoxIt, LLC d/b/a KitNipBox ("KitNipBox" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for damages, injunctive relief, and other relief against Defendants Francois Deschenes, Olivia Canlas (the "Individual Defendants"), and meowbox, Inc. ("Meowbox", collectively, the "Defendants"). In support of its claims, KitNipBox alleges as follows:

**PRELIMINARY STATEMENT**

1. KitNipBox provides a monthly box of cat related products to thousands of subscribers worldwide.

1

2. Defendant Meowbox is KitNipBox's primary competitor in the subscription cat product service space.

3. The Individual Defendants and Meowbox, the company they founded, chose not to compete on a level playing field. Defendant Deschenes, with the support and encouragement of Defendant Canlas and on behalf of Defendant Meowbox, illegally hacked into KitNipBox's website in order to gain confidential information and trade secrets belonging to KitNipBox while at the same time attempting to disrupt KitNipBox's servers, email deliverability, and reputation. All of the Defendants *did* in fact obtain this illicitly acquired information.

4. Also pursuant to the CFAA, KitNipBox is entitled to civil remedies, and has therefore commenced this action before this Court. Additionally, Defendants' actions run contrary to the clear common laws protecting infringement of trade secrets, which provides trade secret owners with the power to file civil lawsuits against misappropriators, as well as the torts of unfair competition, unjust enrichment, tortious interference with existing and prospective contractual and business relations, and civil conspiracy.

5. Faced with an illegal intrusion into its website, the theft of its trade secrets and proprietary business and confidential information, and tortious interference with its prospective business relations, KitNipBox seeks restitution, damages, and injunctive and other relief from this Court. Defendants should not be permitted to continue to benefit from their unlawful actions, and should be enjoined from benefiting from their past misdeeds. KitNipBox should be compensated for all harm inflicted by Defendants, including through the award to KitNipBox of punitive damages.

**THE PARTIES**

6. BoxIt, LLC is a Colorado limited liability company with a registered office located at 7135 Austin Street, Forest Hills, NY 11375.

7. On information and belief, meowbox, Inc. is a British Columbia corporation whose officers direct, control, and coordinate the corporation's activities from its headquarters in Vancouver, British Columbia, Canada. The registered office address of meowbox, Inc. is 375 Water Street Vancouver BC V6B 5C6.

8. Olivia Canlas is the Chief Executive Officer ("CEO") of meowbox, Inc.

9. Francois Deschenes is the Chief Technology Officer ("CTO") of meowbox, Inc.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over this case because this Complaint asserts federal claims against the Defendants pursuant to the CFAA, 18 U.S.C. § 1030.

11. This Court has supplemental jurisdiction over KitNipBox's state law claims pursuant to 28 U.S.C. § 1367, as KitNipBox's state law claims are directly related to its CFAA claims, and both KitNipBox's state law and CFAA claims form part of the same case or controversy.

12. This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1332, by virtue of the parties' diversity of citizenship and because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), as Defendants stole information regarding one or more KitNipBox customers residing in this judicial district. Defendants are subject to personal jurisdiction in this district by virtue of, among other things, doing business in this judicial district, causing harm in this district by acts or omissions described herein while deriving substantial revenue or benefit therefrom, marketing goods and services in this district, and otherwise having substantial contact with this district.

## KITNIPBOX'S BUSINESS MODEL

14. KitNipBox operates a monthly subscription service. Cat-loving customers who subscribe to KitNipBox receive a box containing high-quality cat toys, all-natural cat treats, and other cat related products every month.

15. Customers subscribe to KitNipBox's service by going to KitNipBox's website, located at [https://www.kitnipbox.com/](https://www.kitnipbox.com/), entering their email address, clicking "Get started", and signing up for a subscription. *See* Exhibits A, B, and C, attached hereto.

16. If a potential KitNipBox customer opts into the KitNipBox email list by entering her email address on the KitNipBox website, but does not complete a KitNipBox subscription, KitNipBox sends the potential customer an automated "abandoned cart email." *See* Exhibit D, attached hereto.

17. If a current KitNipBox customer or email list subscriber enters her email address on the KitNipBox checkout page, KitNipBox displays a message stating that the email address is already in use. *See* Exhibit E, attached hereto.

18. KitNipBox has spent hundreds of thousands of dollars in order to maintain and enhance its business potential through, *inter alia*, the technology of its products and assets, and has developed substantial resulting goodwill with its customers and its potential customers.

19. Particularly, KitNipBox has expended substantial amounts of money and resources in order to create, research, develop and compile confidential and proprietary information relating to, among other things, operations, pricing, procedures, methods, technical data, product, equipment, market, and customer information regarding its business in order to make its services as safe, effective, efficient and competitive in the marketplace as possible (the "Confidential Information").

20.     KitNipBox has developed relationships and cultivated goodwill with its customers, and the information about its customers – including information regarding the identity of its customers – is a product of KitNipBox's material investment of time and money.

21.     KitNipBox protects the confidentiality of its Confidential Information. KitNipBox similarly guards its information regarding prospective customers. All of this information is a highly valuable resource from which KitNipBox generates business. To further protect the confidential and proprietary information that is the core of its business, KitNipBox requires its employees to execute confidentiality agreements upon employment, all access to KitNipBox computers containing confidential information are password protected, access to trade secret information is limited to employees on a need-to-know basis, and third-parties are required to enter into Non-Disclosure Agreements prior to receipt of KitNipBox's Confidential Information.

## DEFENDANT DESCHENES KNOWINGLY AND INTENTIONALLY EXECUTES A MALICIOUS SCRIPT ON KITNIPBOX'S WEBSITE

22.     Meowbox is aggressively attempting to grow its business in the United States and in this judicial district in competition with KitNipBox.

23.     On the evening of March 14, 2016, Defendant Deschenes executed a malicious script on KitNipBox's website (the "Malicious Script").

24.     Defendant Deschenes executed the Malicious Script with the support and encouragement of Defendants Canlas and Meowbox.

25.     During the approximately 40 minutes of Defendant Deschenes's execution of the Malicious Script, the Malicious Script added over 8,000 email addresses to KitNipBox's database in an attempted denial of service attack.

26. On information and belief, the email addresses which Defendant Deschenes caused the Malicious Script to input into KitNipBox's database are email addresses of Defendant Meowbox's current and/or former subscribers (the "Email List").

27. Each email address associated with the Email List which was not subscribed to KitNipBox as of March 14, 2016 received an automated "abandoned cart email" from KitNipBox after their email address was inputted by the Malicious Script.

28. Defendant Deschenes programmed the Malicious Script to capture this information. The Malicious Script thereby allowed the Defendants to identify customers in KitNipBox's database.

29. Defendant Deschenes executed the Malicious Script, in part, because the Defendants wished to target and "poach" subscribers from KitNipBox.

30. Because an automated response email was generated for each of the email addresses inputted into KitNipBox's database by the Malicious Script, the thousands of email addresses inputted into KitNipBox's database by the Malicious Script caused spam reports regarding KitNipBox's emails (*i.e.*, KitNipBox emails that were marked as spam by recipients and moved to recipients' spam folders) to skyrocket nearly one hundred fold.

31. KitNipBox's complaint (spam) rate went from a 0.14% average in the ninety (90) days before Defendant Deschenes executed the Malicious Script, to 12.50% on March 15, 2016, the day after Defendant Deschenes executed the Malicious Script.

32. One result of this dramatic increase in spam reports directly caused by the Malicious Script was that, on March 15, 2016, KitNipBox's Mandrill rating was downgraded from "Excellent" to "Good." *See* Exhibit F, attached hereto.

33. As a direct result of this downgrade, emails sent by KitNipBox following March 15, 2016, will be more likely to end up in a recipient's spam folder. Therefore, following the downgrade, it will be harder for KitNipBox to directly reach customers, partners, suppliers, prospective employees, and other third parties. Therefore, KitNipBox's business has been and will continue to be negatively affected by the downgrade caused by the Malicious Script.

34. Because the Malicious Script inputted the entire Email List into KitNipBox's database, every email address associated with the Email List who was not also subscribed to KitNipBox received an automated email from KitNipBox in direct response to the execution of the Malicious Script.

35. Defendant Deschenes's running of the Malicious Script therefore had the further effect of alienating and otherwise negatively effecting the goodwill of potential future customers of KitNipBox.

36. Defendant Deschenes executed the Malicious Script, in part, in order to negatively impact KitNipBox's email deliverability and degrade KitNipBox's reputation.

37. Defendant Deschenes executed the Malicious Script, in part, in order to attempt to interrupt or suspend the service of https://www.kitnipbox.com/.

38. Defendant Deschenes executed the Malicious Script, in part, with the intent or eroding or otherwise diminishing the goodwill between KitNipBox and KitNipBox's current and potential customers.

## THE AFTERMATH OF THE ATTACK

39. On March 15, 2016, KitNipBox discovered the attack. Subsequently, a third-party digital security firm traced the identity of the person behind the Malicious Script as Defendant Deschenes.

40. In a letter dated March 17, 2016, Defendants' counsel tacitly admitted that Defendant Deschenes executed the Malicious Script. Defendants' counsel stated that, although Defendant Deschenes executed the Malicious Script, in Defendants' counsel's opinion the CFAA was not "violated by running a script on a public website." *See* Exhibit G, p. 1, attached hereto.

41. Defendants' counsel's stated opinion that the CFAA was not violated when Defendant Deschanes executed the Malicious Script is incorrect as a matter of law.

42. The conduct of the Individual Defendants was and is in furtherance of a conspiracy, in partnership with Meowbox, to obtain and convert to their own use and financial gain the property of KitNipBox, the trade secrets of KitNipBox, KitNipBox's Confidential Information, and the goodwill generated directly and indirectly by their association with KitNipBox for the benefit of themselves and Meowbox, and to do so, by means of, *inter alia*, solicitation of KitNipBox customers whose names became known to them through the use of the Malicious Script.

43. Rather than invest the time and effort honestly to develop their own customers, the Defendants conspired improperly and deceitfully to raid customers and other confidential and proprietary business information from KitNipBox.

44. The Defendants knowingly and intentionally tried to harm and did in fact harm KitNipBox through Defendant Descehenes's execution of the Malicious Script. KitNipBox has suffered significant economic and non-economic damages thereby.

## COUNT I
## VIOLATION OF 18 U.S.C. § 1030(a)(5)(A)
(Against All Defendants)

45. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 44.

46.     18 U.S.C. § 1030(a)(5)(A) makes it a violation to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer."

47.     KitNipBox's computers, computer systems, and computer network are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in or affect interstate or foreign commerce or communication.

48.     Defendant Deschenes' behavior in executing the Malicious Script was a clear violation of 18 U.S.C. § 1030(a)(5)(A).

49.     Defendant Deschenes was motivated and encouraged to partake of such behavior by Defendants Canlas and Meowbox.

50.     The Defendants' act of executing the Malicious Script on KitNipBox's computers has caused damage to KitNipBox.

51.     The Defendants' conduct was willful and malicious and warrants the imposition of punitive damages.

52.     KitNipBox has suffered economic damages by the acts of Defendants, as defined in the CFAA, in an amount in excess of $75,000.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1030(a)(2)**
(Against All Defendants)

53.     KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 52.

54.     18 U.S.C. § 1030(a)(2) makes it a violation to "intentionally access[] a computer" by "exceed[ing] authorized access, and thereby obtain[] . . . information from any protected computer."

55. 18 U.S.C. § 1030(e)(6) defined "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter."

56. KitNipBox's computers, computer systems, and computer network are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in or affect interstate or foreign commerce or communication.

57. In executing the Malicious Script Defendant Deschenes violated 18 U.S.C. § 1030(a)(2).

58. Through his execution of the Malicious Script, Defendant Deschenes obtained confidential information, including confidential trade secrets, from KitNipBox's protected computers.

59. Defendant Deschenes was motivated and encouraged to execute the Malicious Script by Defendants Canlas and Meowbox.

60. The Defendants' conduct was willful and malicious and warrants the imposition of punitive damages.

61. KitNipBox has been damaged by the acts of Defendants, as the term is defined in the CFAA, in an amount in excess of $75,000.

## COUNT III
## TRADE SECRETS
(Against All Defendants)

62. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 61.

63. As set forth above, KitNipBox possesses trade secrets and confidential information which are critical to the company's success.

64. KitNipBox's trade secrets and confidential information are not generally known to and are not readily ascertainable by proper means by others who can gain economic value from its use and/or disclosure.

65. KitNipBox exercises reasonable efforts to maintain the secrecy of its trade secrets and confidential information.

66. KitNipBox's trade secrets and other confidential information are valuable assets of KitNipBox that provide KitNipBox with competitive advantages in the specialized marketplace in which they serve.

67. As set forth above, the Individual Defendants have worked together to misappropriate and access, transmit, communicate, disclose, and/or utilize KitNipBox's trade secrets and confidential information for their own benefit and the benefit of meowbox, through improper means and without the consent of KitNipBox.

68. All of the Defendants are, among other things, using and/or may threaten to use KitNipBox's trade secrets and other confidential information to contact and solicit KitNipBox's customers and to compete directly against KitNipBox.

69. The actions of the Defendants were and continue to be willful and malicious.

70. Defendants' actual and/or threatened misappropriation of KitNipBox's trade secrets and confidential information has and will continue to cause irreparable harm to KitNipBox unless enjoined.

71. Defendants' concerted egregious misappropriation of KitNipBox's trade secrets, coupled with the other unlawful conduct described herein, warrant the imposition of punitive damages.

## COUNT IV
## UNFAIR COMPETITION
(Against All Defendants)

72. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 71.

73. KitNipBox has the right to be free from unfair competition caused by the unlawful misappropriation and misuse of its confidential and proprietary business information.

74. By their conduct described above, the Defendants have and will continue to compete unfairly against KitNipBox.

75. By stealing, disclosing and misusing KitNipBox's Confidential Information and by taking advantage of that information in competition with KitNipBox, the Defendants have gained unfair competitive advantages over KitNipBox.

76. KitNipBox has no adequate remedy at law by which to prevent Defendants from unfairly competing against it and money damages alone cannot compensate KitNipBox for the harm caused by Defendants' unfair competition.

77. Defendants' concerted egregious unfair competition, coupled with the other unlawful conduct described herein, warrants the imposition of punitive damages.

## COUNT V
## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL AND BUSINESS RELATIONSHIPS
(Against All Defendants)

78. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 77.

79. Valuable business relationships currently exist and have existed between KitNipBox and its customers and potential customers.

80. The Defendants knew or had reason to know about KitNipBox's aforementioned relationships.

81. By their conduct as described above, the Defendants intentionally and maliciously and through improper means induced or attempted to induce prospective and current customers not to do business with KitNipBox.

82. Defendants' conduct was without justification or privilege.

83. This wrongful, improper, and unlawful interference with KitNipBox's current and prospective business relationships continues and will continue, unless enjoined.

84. The Defendants' conduct has caused and will continue to cause, unless enjoined, substantial, immediate and irreparable injury to KitNipBox, including but not limited to the actual and potential loss of customer orders and long-term customer goodwill.

85. KitNipBox has no adequate remedy at law to redress this ongoing tortious interference with its contractual and business relationships and the irreparable damage to those business relations arising therefrom.

86. The Defendants' conduct as described above is outrageous because of its knowing and reckless indifference to KitNipBox's rights.

## COUNT VI
## UNJUST ENRICHMENT
(Against All Defendants)

87. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 86.

88. By stealing, sharing and destroying KitNipBox's Confidential Information and engaging in other improper acts to benefit their own competing business, the Defendants have benefitted financially and have been and will otherwise be unjustly enriched.

89. The acceptance and retention of such benefits by Defendants are under such circumstances that it would be inequitable for them to retain those benefits without payment of value.

## COUNT VII
## TRESPASS TO CHATTELS
(Against All Defendants)

90. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 89.

91. Defendant Deschenes's execution of the Malicious Script was not authorized by KitNipBox, and KitNipBox at no time provided its consent to such execution.

92. The Malicious Script caused economic damages to and otherwise harmed KitNipBox. *See Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 250 (S.D.N.Y. 2000) ("evidence of mere possessory interference is sufficient to demonstrate the quantum of harm necessary to establish a claim for trespass to chattels.").

93. Defendants Canlas and Meowbox encouraged Defendant Deschenes to execute the Malicious Script, thereby harming KitNipBox.

94. KitNipBox is entitled to compensatory and punitive damages, in an amount to be specified at trial, and permanent injunctive relief, on its trespass to chattels claim.

## COUNT VIII
## CIVIL CONSPIRACY
(Against Defendants Deschenes and Canlas)

95. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 94.

96. Defendant Deschenes coordinated with Defendant Canlas, before, during, and after the execution of the Malicious Script.

97. Specifically, on information and belief, before executing the Malicious Script, Defendants Deschenes and Canlas conspired to utilize the Malicious Script in order to attack the integrity of KitNipBox's computer network and to cause KitNipBox damages.

98. The Individual Defendants thereby acted together by agreement and course of action in a conspiracy with the purpose to violate state and federal law and to harm KitNipBox.

99. The Individual Defendants' actions were the proximate cause of damage to KitNipBox, including but not limited to a loss of business from existing customers.

100. The actions of the Individual Defendant co-conspirators were willful and malicious and warrant the imposition of punitive damages.

## COUNT IX
## PERMANENT INJUNCTIVE RELIEF
(Against All Defendants)

101. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 100.

102. By virtue of the foregoing, KitNipBox has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a permanent injunction against the Defendants utilizing any of the information received through the execution of the Malicious Script.

103. Because of their documented bad faith behavior, the Defendants should be permanently enjoined from visiting, accessing, or otherwise interacting with KitNipBox's website, https://www.kitnipbox.com/ or any other digital property owned by or related to KitNipBox, including social media properties.

104. Unless the Defendants are permanently enjoined from the foregoing conduct, KitNipBox will be irreparably harmed by:

(a) Disclosure of trade secrets, proprietary business and other confidential information which are solely the property of KitNipBox and its customers;

(b) Loss of confidentiality of customers' records and information, loss of confidence and trust of customers, loss of goodwill, and loss of business reputation;

(c) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

105. KitNipBox has no adequate remedy at law.

## COUNT X
## ACCOUNTING
(Against All Defendants)

106. KitNipBox incorporates herein by reference the allegations contained in paragraphs 1 through 105.

107. Defendant Deschenes illegally and illicitly executed the Malicious Script, thereby hacking into KitNipBox's computer network and stealing its Confidential Information.

108. The Defendants should provide KitNipBox with an accounting, consisting of an accounting of all of the information, including but not limited to all of the Confidential Information, the Defendants (together or individually) learned or received due to the execution of the Malicious Script.

109. Without such an accounting, KitNipBox will not be able to definitively ascertain whether any additional information, including Confidential Information, has been stolen or otherwise obtained by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, based upon these allegations and claims, KitNipBox prays the Court to enter judgment in its favor and against all Defendants, jointly and severally, as follows:

(a) Actual and compensatory damages, in an amount over and above $75,000, the precise amount to be determined by the Court or at trial,

(b) Punitive damages, in an amount over and above $75,000, the precise amount to be determined by the Court or at trial,

(c) A permanent injunction barring the Defendants from continuing to misappropriate, possess and use KitNipBox's confidential and proprietary information,

(d) A permanent injunction barring the Defendants from soliciting, doing business with, or otherwise initiating any further contact or communication with any of the email addresses associated with the Email List,

(e) A permanent injunction barring the Defendants from using, disclosing, or transmitting to any person or entity other than KitNipBox, for any purpose, including solicitation of said customers, the information contained in the records of KitNipBox or concerning its customers, including, but not limited to, the names and email addresses of said customers,

(f) A permanent injunction barring the Defendants from visiting, accessing, or otherwise interacting with KitNipBox's website, https://www.kitnipbox.com/ or any other digital property owned by or related to KitNipBox, including social media properties.

(g) An accounting of all of the information, including but not limited to all of the Confidential Information, the Defendants (together or individually) learned or received due to the execution of the Malicious Script,

(h) Grant KitNipBox costs of the litigation, including interest, attorneys' fees, and court costs, and

(i) Grant such other relief, including but not limited to Defendants' profits or potential profits from their misappropriation of KitNipBox's trade secret and Confidential Information, as this Court may deem just, proper and equitable.

Plaintiff demands a trial by jury on all issues so triable.

                Respectfully submitted,

By: */s/*
Ira T. Kasdan, Esq. (DC Bar #292474)
Bezalel A. Stern, Esq. (DC Bar #1025745)
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400 (phone)
(202) 342-8451 (facsimile)
Email: ikasdan@kelleydrye.com
       bstern@kelleydrye.com

*Counsel for Plaintiff*

Date: April 14, 2016